UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Delon Thurston,<br><br>          Plaintiff,<br><br>     v.<br><br>City of Vallejo, et al.,<br><br>          Defendants. | No. 2:19-CV-1902-KJM-CKD<br><br>ORDER |

This § 1983 action arises from the traffic stop of plaintiff Delon Thurston by City of Vallejo police officers. Defendants City of Vallejo, Chief of Vallejo Police Department Andrew Bidou, Officer Kevin Barreto, and Officer Heather Lamb move to dismiss Thurston's First Amended Complaint. Defendants also move to strike a paragraph of the complaint, which alleges ongoing litigation against the City in support of Thurston's claim under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). For the reasons below, the court **grants in part** defendants' motion.

I. **BACKGROUND**

On October 30, 2018, Thurston was pulled over by City of Vallejo police officers. First Am. Compl. ("FAC") ¶ 1, ECF No. 15. Officer Barreto, Officer Tonn, and an unnamed officer armed with a taser, approached Thurston's car. *Id.* ¶¶ 18–19. Thurston alleges the unnamed officer threatened her with a taser, and when she told the officers she was afraid, Officer Barreto

1

opened her door, dragged her out of the car and threw her down on the cement. *Id.* ¶¶ 19–20. Officer Heather Lamb then patted her down, inappropriately touching Thurston's breasts and genitals in the process. *Id.* ¶ 21. Officer Lamb then arrested Thurston for resisting arrest, though the Solano County District Attorney declined to prosecute any charge. *Id.* ¶ 22. Thurston claims to have suffered physical and emotional injuries from this encounter, *id.* ¶ 24, and to her knowledge, "none of the [d]efendant [o]fficers were disciplined or retrained as a result of this incident," *id.* ¶ 25.

On September 19, 2019, Thurston filed the original complaint. *See generally* Compl., ECF No. 1. At or about the same time, as the court acknowledged in a prior order, plaintiff's counsel filed three separate cases, unrelated to this case. *See* Order (Nov. 19, 2019) at 1–2, ECF. No. 8. In those cases, as here, the plaintiffs alleged that prior lawsuits support a *Monell* claim against the City of Vallejo. *Id.* at 2. One of the three cases filed by plaintiff's counsel is *McCoy, et al. v. City of Vallejo, et al.*, No 19-1191, 2020 WL 374356 (E.D. Cal. Jan. 23, 2020). *Id.* This court stayed the present matter pending resolution of a motion to dismiss in *McCoy*. *Id.* at 3. On January 30, 2020, parties filed a notification that the court had decided *McCoy*, Notification of Decision, ECF No. 10, and on February 5, 2020, this court lifted the stay, Minute Order, ECF. No. 13. Thurston subsequently filed the operative amended complaint. *See generally* FAC.

The operative complaint names as defendants: City of Vallejo; Chief Bidou in his individual capacity; Officer Kevin Barreto; Officer Heather Lamb; and Does 1–50.[1] *Id.* ¶¶ 6–10. Does 1–25 represent other officers involved in the alleged incident, *id.* ¶ 35, and Does 26–50 encompass high-ranking officials who "knew and/or reasonably should have known about the repeated acts of unconstitutional excessive force," *id.* ¶ 39. Thurston brings a total of seven claims: (1) unreasonable use of force in violation of her Fourth Amendment rights under 42 U.S.C. § 1983 against Officer Barreto, Officer Lamb, and Does 1–25, *id.* ¶¶ 35–37; (2) municipal

---

[1] If a defendant's identity is unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint. Fed. R. Civ. P. 4(m).

liability for violation of constitutional rights under *Monell* against the City, Chief Bidou and Does 26–50, *id*. ¶¶ 38–43; (3) negligence against each defendant and Does 1–25, *id*. ¶¶ 44–46; (4) violation of right to enjoy civil rights under California Civil Code section 52.1 (Bane Act) against Officer Barreto, Officer Lamb, and Does 1–25, *id*. ¶¶ 47–48; (5) battery against Officer Barreto, Officer Lamb, and Does 1–25, *id*. ¶¶ 49–50; (6) assault against Officer Barreto, Officer Lamb, and Does 1–25, *id*. ¶¶ 51–52; and (7) intentional infliction of emotional distress against Officer Barreto, Officer Lamb, and Does 1–25, *id*. ¶¶ 53–55.

The defendants move to strike a paragraph of the operative complaint and dismiss the *Monell* claim against the City and Chief Bidou. Mot. to Dismiss ("MTD") at 1–2, ECF No. 18-1. Plaintiff opposes. Opp'n, ECF No. 23. Defendants replied. Reply, ECF No. 24. The matter was submitted without oral argument. Minute Order, ECF No. 25.

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Ultimately, the inquiry focuses on the

interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) quoted in *Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).

### B.  Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "'Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded[, and] [i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question.'" *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706–07, 711 (1990)), *rev'd on other grounds by* 510 U.S. 517 (2004).

The granting of a motion to strike "may be proper if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues." *Taheny v. Wells Fargo Bank, N.A.*, No. 10-2123, 2011 WL 1466944 at *2 (E.D. Cal. Apr. 18, 2011) (citing *Fantasy*, 984 F.2d at 1527–28). However, "[m]otions to strike are disfavored and infrequently granted." *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (citations omitted). Indeed, a motion to strike "'should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *Id.* (quoting *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)); *see also Wynes v. Kaiser Permanente Hospitals*, No. 10-0702, 2011 WL 1302916 at *12 (E.D. Cal. Mar. 31, 2011) (noting "courts often require a showing of prejudice by the moving party").

In ruling on a motion to strike, a "court[] may not resolve disputed and substantial factual or legal issues . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation omitted). Finally, "leave to amend should be freely given" unless there is a showing of prejudice to the moving party. *See Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826–27 (9th Cir. 1979) (citing Fed. R. Civ. P. 15(a)) (other citations omitted).

**III. ANALYSIS**

**A.    *Monell* Claim**

Section 1983 provides that "[e]very person who, under color of [law] . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . ." 42 U.S.C. § 1983. This section has been applied to include municipalities and other local governments as "persons" who are subject to liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, municipalities "are responsible only for their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (citations, internal quotation marks omitted). Municipalities "cannot be held liable [for the actions of their employees] under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. Instead, the constitutional injury must occur during the execution of an official "policy or custom." *Id*. at 694.

Ultimately, to establish municipal liability under *Monell*, a plaintiff must prove: "'(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 536 U.S. at 61 (citations omitted). The Ninth Circuit recognizes four theories that establish municipal liability under *Monell*: "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton*

*v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). Cases often refer to the fourth theory as "ratification" by a final policymaker.

Here, Thurston alleges the "deliberate indifference" of high-ranking officials deprived her of her "constitutional rights including, but not limited to [sic] the right to be free from excessive force by [o]fficers, as guaranteed by the Fourth Amendment to the United States Constitution." FAC ¶ 43. Thurston alleges a *Monell* claim against the City, relying on a failure to train or discipline theory, based on the City of Vallejo Police Department's pattern and practice of excessive force, *id.* ¶ 30, and also relying separately on a theory of ratification by a final policymaker, *id.* ¶¶ 39–40. Taking each theory in turn, the court finds Thurston states a *Monell* claim under the failure to train theory but not under the ratification theory.

      **1. Failure to Train or Discipline**

A municipality's failure to train employees may rise to the level of an official policy under *Monell*, but the omission must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)) (internal quotations omitted). Deliberate indifference is a stringent standard of fault. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). The need for training must be "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390. Absent a single violation with a "highly predictable consequence," *Bryan Cty.*, 520 U.S. at 398, a pattern of similar constitutional violations is necessary to demonstrate deliberate indifference. *Connick*, 563 U.S. at 62 (citing *Bryan Cty.*, 520 U.S. at 409). "[C]ontinued adherence to an approach that [policymakers] know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action . . . necessary to trigger municipal liability." *Bryan Cty.*, 520 U.S. at 407 (internal citations omitted). But without a pattern of similar violations, policymakers cannot be said to have "deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

In alleging liability under this theory, Thurston relies on a list of incidents involving the Vallejo Police Department that resulted in litigation or settlement. FAC ¶ 30 (a)–(u). The list of alleged incidents is similar, if not identical, to those Thurston's counsel has pled in other matters before this court and other courts in this District. MTD at 8; Opp'n at 2–3; *see also McCoy*, 2020 WL 374356 at *2–5; *Bagos v. City of Vallejo*, No. 20-0185, 2020 WL 6043949, at *5 (E.D. Cal. Oct. 13, 2020); *Burrell v. City of Vallejo*, No. 19-1898, 2020 WL 1532293, at *1–2 (E.D. Cal. Mar. 31, 2020). Defendants move to strike paragraph 30 of the amended complaint, arguing the prior incidents "do not bear sufficient resemblance" to the instant matter and "expand [the] lawsuit beyond its simple facts." MTD at 8. Specifically, defendants argue the facts of this case are substantially different from those of the alleged incidents, which involve either a "shooting, beating by a baton, use of taser or other devices," or a combination of these actions. *Id.* Defendants argue if their motion to strike is granted, the operative complaint will then not include sufficient factual allegations to state a *Monell* claim under the failure to train theory. *Id.* at 9–10.

This court analyzed a near identical list of incidents in considering the question of sufficient similarity for purposes of a failure to train claim in its opinion in *Bagos v. City of Vallejo*. *See* 2020 WL 6043949 at *5–7. In *Bagos*, this court determined that allegations of prior incidents are "sufficiently similar" and can be used to state a plausible claim for relief if the incidents include the same level of force as the present case. *See id.* Because incidents involving excessive force, deadly force, profiling, or sexual assault each involve distinct standards and training, prior events of one category of force cannot serve as "sufficiently similar" incidents in a matter arising from another level of force. *See id*. at *6.

In *Bagos*, the plaintiff also identified this case brought by Thurston as supporting the *Monell* claim there, and this court in its order characterized the facts of this case as involving profiling and sexual assault. *Id*. at *6 (*see Bagos* Compl. ¶ 21(q), ECF No. 1). In this case, Thurston cites instead to *Graff v. City of Vallejo, et al.*, No. 18-2848 (E.D. Cal. filed Oct. 24, 2018), a case involving sexual assault, in which Sherry Graff was allegedly abused by a police officer at her home during an arrest. *See G*r*aff* Compl. ¶¶ 14–19, ECF No. 1. Applying the same

reasoning as in *Bagos*, the court finds the *Graff* case is "sufficiently similar" to this case such that it could support a *Monell* claim because it also involves sexual assault. *See* FAC ¶ 30(p).

Of course, a single other incident is not sufficient to establish a "pattern" of constitutional violations. *See Benavidez v. Cty. of San Diego*, No. 19-55274, 2021 WL 1343530, at *13 (9th Cir. Apr. 12, 2021); *Tabayoyon v. City of Vacaville, et al.*, No. 19-2022, 2021 WL 107232, at *7 (E.D. Cal. Mar. 31, 2020) ("To plead [a pattern of constitutional violations], plaintiff must provide more than 'isolated incidents of criminal wrongdoing.'") (quoting *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014)). However, as pled, the incident underlying plaintiff's complaint here involves more than profiling and sexual assault; plaintiff also alleges excessive force, and specifically that defendant Barreto threw her to the ground. FAC ¶¶ 1, 37, 42.[2] Given the additional category of force present in this case, plaintiff's allegations of prior incidents of excessive force bearing some factual similarity, *id.* ¶ 30(g) (pulled over; tased and punched), (l) (thrown into light pole), and (s)–(t) (pulled over; thrown to ground), "have some 'possible bearing on the subject matter of the litigation,'" *Bagos*, 2020 WL 6043949 at *6 (quoting *Neveu*, 392 F. Supp. 2d at 1170), and thus survive the motion to strike.

In contrast, the other incidents involving excessive force, FAC ¶ 30 (e)–(f), (h)–(i), (m)–(n), and (q), involve allegations of prolonged beatings and severe physical injuries. The level of force in these incidents far exceeds the level of force alleged in Thurston's case and the court finds they are not sufficiently similar.

The remaining allegations also are not sufficiently similar because they involve the use of deadly force, FAC ¶ 30 (a)–(d), (j), and (o), or First Amendment violations or comments by the Vallejo City Manager, *id.* (k), (r) and (u).

In sum, the court partially grants the motion to strike, striking the incidents listed in FAC ¶ 30 (a)–(f), (h)–(k), (m)–(o), (q), (r) and (u) as they are not "sufficiently similar" to the current matter to plausibly support a *Monell* claim. *See Bagos*, 2020 WL 6043949 at *6 (insufficiently

---

[2] When categorizing this case in *Bagos*, the court relied on the facts as pled in the *Bagos* complaint, which included only the sexual assault allegations. *See Bagos*, 2020 WL 6043949 at *6 (citing *Bagos* Compl., ¶ 21(q)). In considering the operative complaint in this case now, the court has reviewed the complaint itself, which includes the additional excessive force allegations.

8

similar allegations stricken to "obviate 'confusion of the issues'" (quoting *Taheny*, 2011 WL 1466944 at *2)).

The five allegations that survive the motion to strike, FAC ¶ 30(g), (l), (p), (s), and (t), are sufficient to "plausibly suggest an entitlement to relief" based on a pattern of constitutional violations required to state a claim for municipal liability for failure to train, *Bagos*, 2020 WL 6043949 at *4. Accordingly, the court finds Thurston states a claim under the failure to train or discipline theory.

### 2. Ratification

A plaintiff may state a claim for *Monell* liability where an "official with final policy-making authority ratified a subordinate's unconstitutional decision and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992). To hold a municipality liable under the ratification theory, the plaintiff must show the individual in question was a final policymaker. *Id.* at 1347. Whether a local official is a final policymaker is a matter of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) (plurality opinion). Discretion alone is not enough to establish liability, the policymaker in question must be "responsible for establishing final government policy . . . ." *Gillette,* 979 F.2d at 1347 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)). "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority . . . ." *Pembaur*, 475 U.S. at 483. The municipality will only be held liable if the final policymaker had "knowledge of the alleged constitutional violation" and the plaintiff can show the "policymaker approved of the subordinate's act." *See Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). The policymaker must make a deliberate choice to follow a particular course of action among various alternatives. *Pembaur*, 475 U.S. at 483.

Thurston's allegation of ratification based *Monell* liability is unclear and conclusory. Thurston lists multiple individuals in attempting to identify a final policymaker. Thurston alleges Chief Bidou as the "final decision maker for the police department as he can make final decisions about discipline, training, supervision and development of constitutional policing," FAC ¶ 7, and she further alleges Vallejo City Manager Greg Nyhoff, and other unnamed "high-ranking [City]

officials" were final decision makers, *id.* ¶ 39. But simply listing a number of high-ranking individuals is not sufficient to allege a specific final policymaker. *See Bagos*, 2020 WL 6043949 at *7. In the allegations against both Chief Bidou and City Manager Nyhoff, Thurston has not clarified which individual, if either, is a final policymaker as a matter of state law. *See id.* (citing *J.M. by and Through Rodriguez v. Cty. of Stanislaus*, No. 18-1034, 2018 WL 5879725, at *3 (E.D. Cal. 2018) (internal citations omitted)).

Even if Thurston had properly alleged one or more person as a final decision maker, she has not stated a claim under a ratification theory. Thurston's allegations that the policymakers "ratified" or "knew and/or reasonably should have known about" the alleged constitutional violations are conclusory. FAC ¶¶ 39–40. Ratification requires that the policymaker engage in a "conscious, affirmative choice" to pursue a certain policy. *See Gillette*, 979 F.2d at 1347.

Because Thurston has not pled a plausible ratification claim, the court grants the motion to dismiss the *Monell* claim with respect to the ratification theory. However, because the addition of factual allegations could permit a viable claim, dismissal is granted with leave to amend within the confines of Federal Rule of Civil Procedure 11. *See Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) ("Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

**B.     Chief Bidou**

Next the court considers whether Thurston states a claim for supervisory liability against Chief Bidou in his individual capacity.

"[S]upervisory officials are not liable for the actions of subordinates on any theory of vicarious liability under 42 U.S.C. § 1983 . . . ." *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001). But "[a] supervisory official is liable under § 1983 so long as 'there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Rodriguez v. Cty.*

*of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (citing *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018)). The causal connection is established "by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* (alteration in original) (citing *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011)). Therefore, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr*, 652 F.3d at 1208.

Thurston attempts to state a claim for supervisory liability against Chief Bidou based on Chief Bidou's alleged failure to train, FAC ¶ 42, and "discipline or reprimand officers, which resulted in ratification of misconduct," Opp'n at 15. Thurston attempts to implicate Chief Bidou based on his alleged failure to investigate her claim and discipline or retrain the individual officers involved. FAC ¶ 27. But Thurston's complaint lacks any factual allegations indicating Chief Bidou was personally involved in the actions that infringed on her constitutional rights. *See generally* FAC. For example, Thurston does not allege any facts showing Chief Bidou was aware of the conduct of the individual officers and refused to stop it. *Id.* Absent such factual detail, Thurston relies solely on legal conclusions and does not state a claim for supervisory liability based on his personal involvement.

Alternatively, Thurston alleges Chief Bidou knew or should have known of a pattern of excessive force by Vallejo officers, *id.* ¶ 39, and "approved, ratified, condoned, encouraged, sought to cover up, and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by Vallejo Police Department employees by failure to discipline and retrain officers who acted unlawfully and outside of department policy," which caused the deprivation of Thurston's constitutional rights, *id.* ¶¶ 40, 43. Under this theory, Thurston relies heavily on the incidents listed in one paragraph of the operative complaint and the conclusory allegation that Chief Bidou knew or should have known of the misconduct. *Id.* ¶ 30. But these allegations are insufficient to support a claim of supervisory liability. *See Tennyson v. Cty. of*

1 | *Sacramento*, No. 19-0429, 2020 WL 4059568, at *4 (E.D. Cal. July 20, 2020) (dismissing supervisory liability claim where "complaint contains nothing more than bare recitals and conclusory allegations as to [the supervisor's] knowledge or involvement in the underlying conduct."). The court finds Thurston does not state a claim for supervisory liability. Dismissal is granted, but with leave to amend if possible within the confines of Federal Rule of Civil Procedure 11. *See Sonoma Cty. Ass'n of Retired Emps.*, 708 F.3d at 1117.

**IV.  CONCLUSION**

The court finds that Thurston states a *Monell* claim under the failure to train theory, but she does not adequately state a *Monell* claim based on ratification by a final policymaker. Furthermore, she does not state a claim against Chief Bidou. Therefore, the court **grants in part** defendants' motion to dismiss. Thurston's *Monell* claim may proceed, to the extent it is based on failure to train or discipline, and the claim against Chief Bidou in his individual capacity is dismissed with leave to amend. Any amended complaint consistent with this order must be filed within twenty-one (21) days.

This order resolves ECF No. 18.

IT IS SO ORDERED.

DATED: May 6, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE