UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Delon Thurston,<br><br>                    Plaintiff,<br><br>        v.<br><br>City of Vallejo, et al.,<br><br>                    Defendants. | No. 2:19-cv-01902-KJM-CKD<br><br>ORDER |

Delon Thurston alleges City of Vallejo police officers violated her Fourth Amendment rights when they pulled her from her car and searched her following a traffic stop. The defendant officers have moved for summary judgment. The court **denies the motion**.

## I.    BACKGROUND

The court has determined that the following facts are supported by the record and undisputed unless otherwise indicated.

On October 30, 2018, Vallejo Police Officers Kevin Barreto, Jarrett Tonn, and Heather Lamb stopped Delon Thurston, an African American woman, for a traffic violation. First Am. Compl. ¶ 13, ECF No. 15 (FAC); Pl. Resp. to Stmt. Undisputed Facts (SUDF) ¶¶ 1–3, ECF No. 37-2.[1] Officers Barreto and Tonn had been driving behind Thurston, and they pulled her over

---

[1] Wherever the court cites to the Statement of Undisputed Facts the court has confirmed the accuracy of the information by checking the underlying record.

after she made a left turn. *Id.* ¶ 5.  Barreto says he pulled Thurston over because she slammed on her brakes and turned without using her blinker.  *Id.* ¶¶ 6–7; Barreto Decl. ¶ 3, Defs. Ex. A, ECF No. 34-4.  Tonn says that Thurston "engaged" in an unspecified "dangerous driving maneuver." Tonn Decl. ¶ 3, Defs. Ex. B, ECF No. 34-4.  Thurston says she used her blinker, and she denies driving dangerously.  Thurston Dep. 50:13–50:15, Odiwe Decl. Ex. 1, ECF No. 37-4.

Thurston was just arriving at her home when Barreto and Tonn stopped her, so she pulled into her driveway and stayed in the car as the officers approached, Barreto on the driver's side and Tonn on the passenger's side.  SUDF ¶¶ 8–9.  Barreto's and Tonn's body cameras recorded the stop.  Barreto Body Worn Camera (BWC), Defs. Ex. H; Tonn BWC, Defs. Ex. I.

As the two officers came closer, they saw Thurston was wearing purple latex gloves. SUDF ¶ 10.  They had heard that car thieves wear latex gloves to avoid leaving fingerprints, so they immediately began wondering whether Thurston had stolen the car.  Barreto Decl. ¶ 6; Tonn Decl. ¶ 6.  Barreto asked Thurston to turn off her car and give him her driver's license.  Thurston refused.  She was parked in her home driveway and felt uncomfortable with how the situation was developing.  SUDF ¶ 12.  She began to roll up her driver's side window.  SUDF ¶ 12.  Barreto then opened her door, reached over her, and turned her car off.  Thurston began screaming and asking why Barreto was touching her.  *Id.*

At some point, Thurston reached for her bag, which was in the passenger's seat, to get her documents.  SUDF ¶ 18; Thurston Dep. at 61:3–61:7.  Exactly when she did this is disputed.  *See* Defs. Responses to Pl. Statement of Disputed Facts (SDF) ¶ 10, ECF No. 38-2.  From the body camera video, it appears Thurston reached for the bag after Barreto opened the door.  Barreto BWC.

After he opened the car door, Barreto pulled Thurston from the car and threw her to the ground.  He knelt on her back, and Tonn pushed his knee into her neck, driving her face into the pavement.  Barreto handcuffed her.  Barreto Decl. ¶ 17; Thurston Dep. 72:12–72:18.

Several other officers then arrived, including Officer Heather Lamb.  SUDF ¶ 28.  Lamb patted Thurston down while she was handcuffed.  *Id.* ¶ 29.  No body camera captured an unobstructed view of the entire pat-down.  Thurston asserts that during the pat-down, Lamb

2

1  sexually assaulted her by touching Thurston's breasts and inserting her fingers into Thurston's

2  vagina through her clothes. *Id*. ¶¶ 31–33.  Thurston says Lamb's finger was within her vagina for

3  about two or three seconds.  Thurston Dep. at 68:5–68:18, 76:7.  The defendants, and Lamb

4  specifically, dispute this.  SDF ¶ 15.

5         Thurston originally filed this action against the City of Vallejo, Chief Andrew Bidou and

6  Officers Barreto and Lamb.  *See generally*, Compl., ECF No. 1.  The court stayed the matter

7  pending the resolution of a motion to dismiss in a separate case in this district with similar

8  allegations by different plaintiffs against the City.  ECF No. 8.  After the judge resolved the

9  motion to dismiss in that separate case, ECF No. 10, this court lifted the stay, and Thurston

10  amended her complaint.  *See generally* First Am. Compl.  The defendants moved to dismiss, ECF

11  No. 18, and the court granted the motion as to the City and Chief Bidou.  Prev. Order (May 7,

12  2021), ECF No. 30.  Thurston's claims against Barreto and Lamb remain:

13       • excessive force and unreasonable search and seizure in violation of her Fourth

14          Amendment rights (claim 1);

15       • negligence (claim 3);[2]

16       • violation of California Civil Code § 52.1 (Bane Act) (claim 4);

17       • battery (claim 5);

18       • assault (claim 6); and

19       • intentional infliction of emotional distress (claim 7).

20  *See generally* FAC.

21         Barreto and Lamb move for summary judgment.  Mot. for Summary J., ECF No. 34;

22  Mem., ECF No. 34-1.  Thurston opposes.  Opp'n, ECF No. 37.  The defendants replied.  Reply,

23  ECF No. 38.  The court held a hearing on the motion, attended by plaintiff's counsel Kenneth

24  Odiwe and defendants' counsel John Whitefleet, with Jennifer Thompson and Katelyn Knight

25  observing for defendants.

---

[2] The court dismissed claim 2.  Prev. Order (May 7, 2021) at 12; ECF No. 33.

## II.   LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment must first show no material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  It can do so by showing the record establishes facts beyond genuine dispute, or it can show the adverse party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The nonmoving party must then "establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  Both must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1).  The court views the record in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. *Matsushita*, 475 U.S. at 587–88; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

## III.   ANALYSIS

### A.   Barreto

A court may not grant summary judgment by default.  *See Heinemann v. Satterberg*, 731 F.3d 914, 916–17 (9th Cir. 2013).  That is true "even if there is a complete failure to respond to the motion." Fed. R. Civ. P. 56, Advisory Committee Notes to 2010 Amendments.  Rule 56 instead offers district courts several options when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact." Fed. R. Civ. P. 56(e).

First, "subdivision (e)(1) recognizes that the court may afford an opportunity to properly support or address the fact.  In many circumstances this opportunity will be the court's preferred first step." Fed. R. Civ. P. 56, Advisory Committee Notes to 2010 Amendment.  Here, having carefully considered this option, the court declines to afford Thurston a further opportunity to respond given that she declined to do so at hearing and gave no indication that with time she would offer a substantive response that would assist the court.

4

1    Second, "the court may . . . consider the fact undisputed for purposes of the motion." Fed.

2    R. Civ. P. 56(e)(2).  "The fact is considered undisputed only for purposes of the motion; if

3    summary judgment is denied, a party who failed to make a proper Rule 56 response or reply

4    remains free to contest the fact in further proceedings."  Fed. R. Civ. P. 56, Advisory Committee

5    Notes to 2010 Amendment.  The court also declines to consider any particular facts undisputed.

6    Doing so would not further the interests of justice, given that the record on its face contains

7    conflicting evidence about the circumstances surrounding the traffic stop.

8    Third, the court may consider the merits and "grant summary judgment if the motion and

9    supporting materials—including the facts considered undisputed—show that the movant is

10   entitled to it." Fed. R. Civ. P. 56(e)(3).  Considering the merits is the appropriate course in this

11   case.  The court will determine whether Barreto is entitled to judgment as a matter of law based

12   on the pretrial record.[3]  Here the record is readily accessible and a review of the material

13   information does not place an unreasonable burden on the court.

14              **1.      Search and Seizure**

15   Barreto argues he did not violate Thurston's Fourth Amendment rights when he pulled her

16   over and arrested her.  Thurston does not respond; in her briefing, she focuses entirely on the pat-

17   down by Lamb.  *See* Opp'n at 6.  At hearing, plaintiff's counsel clarified that plaintiff did not

18   intend to concede the lawfulness of the stop and arrest but elected not to present arguments

19   because in counsel's assessment, Barreto would likely be entitled to qualified immunity.

20   "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the

21   Government, and its protections extend to brief investigatory stops of persons or vehicles that fall

22   short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Terry v.*

23   *Ohio*, 392 U.S. 1, 9 (1968)).  "[I]n such cases, the Fourth Amendment is satisfied if the officer's

24   action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *Id.*

25   (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).  Courts "must look at the 'totality of the

26   circumstances' of each case to see whether the detaining officer has a 'particularized and

---

[3] District courts may also "issue any other appropriate order." Fed. R. Civ. P. 56(e)(4). The court need not determine in this case whether any other order is appropriate.

objective basis' for suspecting legal wrongdoing." *Id.* (citation omitted). "A traffic violation alone is sufficient to establish reasonable suspicion." *United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)).

"Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances." *District of Columbia v. Wesby*, 138 S. Ct. 577, 585 (2018). "A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *Id.* at 586 (citing *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001)). To determine whether there was probable cause, a court "examine[s] the events leading up to the arrest, and then decide[s] 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371, (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Wesby*, 138 S. Ct. at 586 (citation omitted).

Here, with respect to the traffic stop, as noted above, Barreto argues he had probable cause because Thurston slammed on her brakes and turned without using her blinker. Thurston denies driving dangerously and claims she used her blinker. The court cannot resolve this dispute at summary judgment, so a genuine dispute of material fact precludes the conclusion that the stop was reasonable.

Barreto argues he is entitled to summary judgment even if the relevant facts are disputed. Specifically, Barreto contends the stop was reasonable even if Thurston drove safely and used her blinker because he would then have been relying on his mistaken but good-faith belief that she did not. *See* Mem. at 4–5. Barreto is correct that "an officer's correct understanding of the law, together with a good-faith error regarding the facts, can establish reasonable suspicion" for a traffic stop. *United States v. King*, 244 F.3d 736, 739 (9th Cir. 2001). But "an officer's belief in a mistaken fact must be 'held reasonably and in good faith.'" *United States v. Miguel*, 368 F.3d 1150, 1154 (9th Cir. 2004), *overruled in part on other grounds by United States v. Gasca-Ruiz*, 852 F.3d 1167 (9th Cir. 2017) (en banc) (quoting *United States v. Twilley*, 222 F.3d 1092, 1096

6

1    n.1 (9th Cir. 2000)).  The record does not permit the court to conclude as a matter of law that

2    Barreto's mistake, if his perception of the facts was mistaken, was reasonable and in good faith.

3    Such a conclusion would be possible only with a great deal more undisputed information about

4    the circumstances.  For example, how far from Thurston's car was Barreto?  How abruptly did

5    she brake?  How carefully was Barreto observing her?  Did he have an unobstructed view of her

6    car and blinker?  How light or dark was it outside?  Were there any other cars on the road?

7    Barreto's fellow officer Tonn says nothing about a blinker; why not?  How credible is Barreto's

8    account in light of the other officers' accounts overall?

9         Barreto also argues he is entitled to qualified immunity "for any aspect of the claimed

10   violation of the Fourth Amendment."  Mem. at 9.  "A government official's entitlement to

11   qualified immunity depends on (1) whether there has been a violation of a constitutional right;

12   and (2) whether that right was clearly established at the time of the officer's alleged misconduct."

13   *S.R. Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019), *cert. denied sub nom. Browder v.*

14   *Nehad*, 141 S. Ct. 235, 208 L. Ed. 2d 14 (2020) (citation and marks omitted).  "[U]nder either

15   prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary

16   judgment."  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam).

17        The court opts to consider the first prong of the qualified immunity test first—whether

18   there has been a violation of a constitutional right.  As explained above, the court is unable on the

19   present record to conclude as a matter of law that Barreto did not violate Thurston's Fourth

20   Amendment rights.  It is also impossible at this stage to decide whether the law was clearly

21   established at the time of the incident such that Barreto was on notice of what constituted a

22   violation.  The "clearly established law" must be defined with a "high 'degree of specificity.'"

23   *Wesby*, 138 S. Ct. at 590 (quoting *Mullenix v. Luna*, 557 U.S. 7, 13 (2015)).  The court must

24   match the "particular circumstances" and "context" to controlling law.  *Id.*  This is "especially

25   important in the Fourth Amendment context."  *Id.* (quoting *Mullenix*, 557 U.S. at 12).  But the

26   court "must take care not to define a case's 'context' in a manner that imports genuinely disputed

27   factual propositions."  *Tolan*, 572 U.S. at 657.  Here, characterizing the facts against which to

28   compare what law was "clearly established" requires a factfinder to determine what Barreto saw,

7

1    whether his perception of events was mistaken, and whether his mistake was reasonable and in

2    good faith.  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018); *A.D. v.*

3    *California Highway Patrol*, 712 F.3d 446, 459 (9th Cir. 2013).

4          Barreto's motion for summary judgment of the unreasonable search and seizure claim is

5    denied.

6                              **2.     Excessive Force**

7          Barreto also seeks summary judgment on plaintiff's excessive force claim.  The Fourth

8    Amendment protects against excessive force by "law enforcement officials . . . in the course of an

9    arrest, investigatory stop, or other 'seizure' of a free citizen . . . ."  *Graham v. Connor*, 490 U.S.

10   386, 395 (1989).  "All claims of excessive force . . . are analyzed under the objective

11   reasonableness standard."  *Blanford v. Sacramento Cnty.*, 406 F.3d 1110, 1115 (9th Cir. 2005).

12   This standard requires the court to "balance the nature and quality of the intrusion on the

13   individual's Fourth Amendment interests against the importance of the governmental interests

14   alleged to justify the intrusion."  *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (quoting *United*

15   *States v. Place*, 462 U.S. 696, 703 (1983)).  "The 'reasonableness' of a particular use of force

16   must be judged from the perspective of a reasonable officer on the scene . . . ."  *Graham*, 490 U.S.

17   at 396.  The court's consideration must provide "allowance for the fact that police officers are

18   often forced to make split-second judgments—in circumstances that are tense, uncertain, and

19   rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id*. at

20   397.  "Because this inquiry is inherently fact specific, the determination whether the force used to

21   effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury

22   in rare cases."  *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014)

23   (internal quotation marks and citation omitted).

24         The court pays careful attention to the facts and circumstances of each particular case,

25   including "1) the severity of the crime at issue, 2) whether the suspect poses an immediate threat

26   to the safety of the officers or others, and 3) whether [the suspect] is actively resisting arrest or

27   attempting to evade arrest by flight."  *Id*.  "[C]ourts 'are free to consider issues outside the three

28   enumerated [in *Graham*] when additional facts are necessary to account for the totality of

8

1    circumstances in a given case.'" *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 (9th Cir.

2    2015) (alteration in original) (quoting *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en

3    banc)).

4           Because "triable questions remain as to whether the [ ] stop itself was lawful," any

5    argument that Barreto's force was justified as necessary to affect a "lawful [ ] stop" cannot

6    support summary judgment. *Green*, 751 F.3d at 1049–50. Even if the stop was lawful there

7    remains the question whether the amount of force was justified, given that Barreto pulled

8    Thurston from the car, after which she ended up on the ground, and Barreto knelt on her back

9    while he handcuffed her. Barreto Decl. ¶¶ 15–17 (conceding these facts).

10          The government's interest in the use of this kind of force is focused on "[t]he 'most

11   important'" factor: "whether the suspect posed an 'immediate threat to the safety of the officers or

12   others.'" *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Smith v. City of

13   Hemet*, 394 F.3d 689, 702 (9th Cir.2005) (en banc) (citation omitted)). "A simple statement by an

14   officer that he fears for his safety or the safety of others is not enough; there must be objective

15   factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001).

16   Thurston was pulled over for a minor traffic violation, and "the nature of [this offense] provides

17   little, if any, basis for the officers' use of physical force." *Smith*, 394 F.3d at 703; *Bryan*,

18   630 F.3d at 828 (minor "traffic violations generally will not support the use of a significant level

19   of force") (citation omitted). While the officers claim they suspected potential car theft once they

20   saw Thurston's purple gloves, any "argu[ment] that the crime of vehicular theft is enough in itself

21   to support a finding that [someone] posed an immediate threat . . . is plainly an inference in

22   [d]efendants' favor." *Green*, 751 F.3d at 1050. Construing the evidence in Thurston's favor as

23   required here, her refusal to turn off the car was merely passive resistance. *See Gravelet–Blondin

24   v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013) (where individuals "engag[e] in mere passive

25   resistance," use of "non-trivial force" is unlawful); *Sanchez v. Arpaio*, No. 09-1150, 2010 WL

26   3938353, at *2 (D. Ariz. Oct. 5, 2010) ("Plaintiff posed a *de minimis* threat to the Deputies

27   because she admittedly disregarded their order").

Furthermore, the record before the court does not resolve the factual dispute whether Barreto could have reasonably believed that Thurston was reaching for weapon.  On the one hand, Thurston had been uncooperative by refusing to provide her license, started reaching for a bag the officers had not searched, and screamed when Barreto reached inside the car.  On the other hand, the officers outnumbered Thurston, there was no indication she was in fact armed, the only crime the officers might have observed was a misdemeanor, Thurston was not trying to drive away from the officers, and their suspicion she may have stolen the car was based solely on the fact she was wearing latex gloves.  *See Hopkins v. Bonvicino*, 573 F.3d 752, 777 (9th Cir. 2009).  Given that Barreto had instructed Thurston to give him her license, a reasonable trier of fact, viewing the facts in Thurston's favor, could find she posed no threat but was seeking to comply, however reluctantly, by retrieving her identification documents.  Determining what actually happened "requires credibility assessments and resolution of disputed facts."  *See Petersen v. Smith*, No. 19-6033, 2021 WL 1873159, at *13–14 (W.D. Wash. Feb. 11, 2021), *report and recommendation adopted*, No. 19-6033, 2021 WL 1541175 (W.D. Wash. Apr. 20, 2021) (denying qualified immunity claim in face of excessive force claim at summary judgment stage).

Viewing the facts in Thurston's favor, a reasonable fact finder could also find she was not attempting to flee in any way, including on foot.  Although she was verbally uncooperative, she was otherwise passive and polite until Officer Barreto opened the car door and reached across her for her key.  No body worn camera video shows clearly what happened after Barreto opened the door.  *Cf. Bryan*, 630 F.3d at 830 (finding absence of officer's body camera footage weighed in favor of denying summary judgment).  That Thurston was "in control of the vehicle and its motor was running and its gear in park," is insufficient to conclude as a matter of law that she was a flight risk.  *See Deville*, 567 F.3d at 167.  The fact that she was parked in her "home's driveway," and did not attempt to put the car in gear to drive away, further counsels against granting summary judgment at this time.  *Sanchez*, 2010 WL 3938353, at *2.

In sum, factual questions remain regarding the lawfulness of the initial stop, the extent to which Thurston posed a danger and the degree of her resistance.  The factfinder's resolution of each of these factual disputes will play a part in determining what amount of force, if any, was

1    reasonable.  *See, e.g., Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003); *Petersen*, 2021

2    WL 1873159, at *13–14 (where factual disputes require credibility determinations, summary

3    judgment cannot be granted).

4           Barreto also asserts qualified immunity in response to the excessive force claim.  For the

5    reasons provided above, the court cannot determine as a matter of law whether Barreto used

6    unconstitutionally excessive force, so Thurston has satisfied the first part of the qualified

7    immunity test.  With respect to the second part of the test, whether clearly established law put

8    Barreto on notice that his conduct in this instance was unlawful, courts within and outside the

9    Ninth Circuit had previously held that officers may not use similar force in similar circumstances.

10   In 2007, for example, the Ninth Circuit held that officers used constitutionally impermissible

11   force when they slammed a nonviolent man into the hood of a car when they suspected only that

12   his car's registration was invalid.  *See Winterrowd v. Nelson*, 480 F.3d 1181, 1184–85 (9th Cir.

13   2007).  In the same case, the circuit also rejected the officer's claim of qualified immunity,

14   relying on *Meredith v. Erath*, *supra*, which had been decided in 2003.  *See id.* at 1186.  In

15   *Meredith*, the suspect did not pose a safety risk, had made no attempt to flee, was suspected only

16   of a nonviolent offense, and might have resisted, but only passively.  *See* 342 F.3d at 1060.  She

17   was yelling at the officers that their search was illegal.  *See id.*  Officers "grabbed her by the

18   arms, forcibly threw her to the ground and, twisting her arms, placed handcuffs on her wrists."

19   *Id.*  The circuit found as a matter of law this factual scenario constituted excessive force.  *See id.*

20   at 1061.  The circuit also rejected the officers' claims of qualified immunity in *Meredith*, relying

21   on prior decisions from 1989 and 1997.  *See id.* (citing *Liston v. Cnty. of Riverside*, 120 F.3d 965,

22   976–77 (9th Cir.1997) and *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989)).

23          In sum, a reasonable jury could conclude that Barreto used excessive force, and if it did,

24   he would not be entitled to qualified immunity because the clearly established law provides that

25   excessive force may not be used against a nonviolent suspect who is engaged in passive

26   resistance.  The court denies Barreto's motion for summary judgment of the excessive force

27   claim.

1  **B.      Lamb**

2          With respect to the claims against Lamb, the court considers the questions of unreasonable

3  search and excessive force claim in tandem.  The defendants argue Lamb's pat-down search was

4  reasonable and did not violate Thurston's Fourth Amendment rights.  Mem. at 11.

5  Reasonableness under the Fourth Amendment "depends [not only on] when a seizure is made, but

6  also how it is carried out."  *Garner*, 471 U.S. at 8.  The Ninth Circuit has had occasion to consider

7  the type of case Thurston's claims against Lamb present here: "Beyond the specific proscription

8  of excessive force, the Fourth Amendment generally proscribes 'unreasonable intrusions on one's

9  bodily integrity,' . . . , and other harassing and abusive behavior that rises to the level of

10  'unreasonable seizure.'"  *Fontana v. Haskin*, 262 F.3d 871, 878–79 (9th Cir. 2001) (internal

11  citation omitted).  "Although the excessive force test is a useful analog, it is not directly

12  applicable to assess the type of behavior alleged in this case, because there can be no

13  'countervailing governmental interest' to justify sexual misconduct."  *Id.* at 880.  But "not every

14  truthful allegation of sexual bodily intrusion during an arrest is actionable as a violation of the

15  Fourth Amendment."  *Id.*  A bodily intrusion may not be actionable if it is "provably accidental or

16  *de minimis* and thus constitutionally reasonable."  *Id.* (emphasis in original).  For example, at

17  least one other judge in this district has granted summary judgment when the plaintiff did not

18  present evidence that could support a factfinder's determining a bodily intrusion was sexual and

19  purposeful.  *See Rankin v. Suisun Police Dep't*, No. 2:11-145, 2013 WL 4546096, at *9 (E.D.

20  Cal. Aug. 27, 2013).

21          Here, Thurston maintained under oath during her deposition that Lamb's actions were

22  both intrusive and lasted multiple seconds.  Thurston Dep. at 76:2–76:7.  While Lamb argues any

23  touching was "inadvertent," Mem. at 14, a jury could still conclude that Lamb's actions were

24  neither accidental nor *de minimis*.  As no body camera video captures Lamb's pat-down in its

25  entirety, Barreto BWC; Tonn BWC, resolution of this dispute requires evaluation of the parties'

26  conflicting accounts and a credibility decision that must be left to the jury.

27          The defendants also argue, however, that Lamb is entitled to qualified immunity because

28  no clearly established law puts a "reasonable officer on notice that accidentally making contact

12

1    with a suspect's vaginal area while assisting the suspect to her feet would constitute a Fourth

2    Amendment violation."  Mem. at 14.  To accept defendants' position that the touching was

3    accidental, notwithstanding Thurston's proposed testimony, requires drawing an inference in

4    Lamb's favor, which the court may not do here.  Should Thurston testify that Lamb touched her

5    in an intentional sexual way, and the "jury believes [her], she will have proved that [Lamb]

6    [violated] her Fourth Amendment right."  *Fontana*, 262 F.3d at 881.  And as the Ninth Circuit has

7    observed:

8             There is no situation that would justify any amount of purposeful sexual verbal and
9             physical predation against a handcuffed arrestee.  No risk of flight nor threat to
10            officer safety exists to justify such an abuse of the one-sided power arrangement that
11            arises from a custodial arrest. . . .

12   *Id*.  Thus, the court cannot find that Lamb is protected by qualified immunity at this stage and so

13   denies Lamb's motion for summary judgment on these claims.

14          **C.      State Tort Claims 3, 5, 6 and 7**

15          The parties correctly agree that the outcome of the summary judgment motion as to the

16   § 1983 excessive force claims dictates the court's decision on the state law tort claims.  *See* Mem.

17   at 15, 18; Opp'n at 10; *see Green*, 751 F.3d at 1053; *Brown v. Ransweiler*, 171 Cal. App. 4th 516,

18   527 (2009).  Thus, the court denies the motion as to these claims.

19          **D.      Bane Act Claim**

20          Lastly, the defendants seek summary judgment on Thurston's Bane Act claim, arguing the

21   undisputed facts do not show they had the requisite intent.  The Bane Act "provides a cause of

22   action for violations of a plaintiff's state or federal civil rights committed by 'threats,

23   intimidation, or coercion.'"  *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir.

24   2014) (quoting Cal. Civ. Code § 52.1).  Specifically, the Act requires that alleged violators had "a

25   specific intent to violate the arrestee's right to freedom from unreasonable seizure."  *Cornell v.

26   City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 801 (2017), *as modified* (Nov. 17, 2017).

27   Bane Act "[c]laims . . . may be brought against public officials . . . , and qualified immunity is not

28   available for those claims."  *Reese* , 888 F.3d at 1040–41 (citation omitted).  Also, the "threat,

1  intimidation or coercion" element does not have to be "transactionally independent from the

2  constitutional violation alleged." *Id*. at 1043 (citing *Cornell*, 17 Cal. App. 5th at 799–800).

3       Thurston argues that a "reasonable jury could conclude that Defendants Barreto and Lamb

4  possessed the requisite intent" simply based on their actions, including pulling her from the car

5  and touching her vaginal area.  Opp'n at 9.  Viewing the evidence in the light most favorable to

6  Thurston, it is possible that a reasonable jury could find the officers had the specific intent

7  necessary to prove up a Bane Act claim. The court denies summary judgment on this clam.

8  **IV.   CONCLUSION**

9       The court **denies the motion for summary judgment** (ECF No. 34).

10      In light of the expiration of the dispositive motion deadline, a final pretrial conference is

11  set for **January 27, 2023, at 10:00 a.m. before the undersigned.**[4]  At least one of the attorneys

12  who will conduct the trial, for each of the parties, shall attend the Final Pretrial Conference.  If by

13  reason of illness or other unavoidable circumstance a trial attorney is unable to attend, the

14  attorney who attends in place of the trial attorney shall have equal familiarity with the case and

15  equal authorization to make commitments on behalf of the client.

16      Counsel for all parties are to be fully prepared for trial at the time of the Final Pretrial

17  Conference, with no matters remaining to be accomplished except production of witnesses for

18  oral testimony.  **The parties shall confer and file a joint pretrial conference statement by**

19  **January 6, 2021.  Concurrently with the filing of the Joint Final Pretrial Conference**

20  **Statement, counsel shall submit to chambers the word processable version of the Statement,**

21  **in its entirety (including the witness and exhibit lists) to:**  kjmorders@caed.uscourts.gov**.**  The

22  provisions of Local Rule 281 shall apply with respect to the matters to be included in the joint

23  pretrial statement.  In addition to those subjects listed in Local Rule 281(b), the parties are to

24  provide the court with the following:

25      1.      A plain, concise statement that identifies every non-discovery motion previously

26              tendered to the court and its resolution.

---

[4] The court calendar for this date will indicate whether the hearing will be held by videoconference or in the courtroom.

2.     A concise, joint list of undisputed core facts that are relevant to each claim. Disputed core facts should then be identified in the same manner.  The parties are reminded not to identify every fact in dispute but only those disputed facts that are essential to the formulation of each claim.  Each disputed fact and undisputed fact should be separately numbered or lettered.  Where the parties are unable to agree on the core disputed facts, they should nevertheless list core disputed facts in the above manner.

3.     Concise lists of disputed evidentiary issues that will be the subject of a party's motion *in limine*, and whether the parties believe resolution of any of these motions will be necessary before the first day of trial.

4.     Each party's points of law, which concisely describe the legal basis or theory underlying their claims and defenses.  Points of law should reflect issues derived from the core undisputed and disputed facts.  Parties shall not include argument with any point of law; the parties may include concise arguments in their trial briefs.

5.     A joint statement of the case in plain concise language, which will be read to the jury during voir dire and at the beginning of the trial.  The purpose of the joint statement is to inform the jury what the case is about.

6.     The parties' position on the number of jurors to be impaneled to try the case.

7.     The parties' report on settlement discussions to date and other information related to settlement that will allow the court to schedule a final pretrial settlement conference.

8.     The parties' positions on whether they will consent to a magistrate judge trying the case, given the significant backlog of criminal cases pending before the district court.

Discovery documents to be listed in the pretrial statement shall not include documents to be used only for impeachment and in rebuttal.

/////

15

The parties are reminded that pursuant to Local Rule 281 they are required to attach to the Final Pretrial Conference Statement an exhibit listing witnesses and exhibits they propose to offer at trial. After the name of each witness, each party shall provide a brief statement of the nature of the testimony to be proffered. The parties may file a joint list or each party may file separate lists. These list(s) shall not be contained in the body of the Final Pretrial Conference Statement itself, but shall be attached as separate documents to be used as addenda to the Final Pretrial Order.

Plaintiff's exhibits shall be listed numerically. Defendant's exhibits shall be listed alphabetically. The parties shall use the standard exhibit stickers provided by the court: pink for plaintiff and blue for defendant. In the event that the alphabet is exhausted, the exhibits shall be marked AA, AB, AC, . . . AZ, then BA, BB, BC, . . . BZ, and so on through ZZ, as necessary. All multi-page exhibits shall be stapled or otherwise fastened together and each page within the exhibit shall be numbered. The list of exhibits shall not include excerpts of depositions to be used only for impeachment. In the event that plaintiff(s) and defendant(s) offer the same exhibit during trial, that exhibit shall be referred to by the designation the exhibit is first identified. The court cautions the parties to pay attention to this detail so that all concerned, including the jury, will not be confused by one exhibit being identified with both a number and a letter. The parties are encouraged to consult concerning exhibits and, to the extent possible, provide joint exhibits, which shall be designated as JX and listed numerically, e.g., JX-1, JX-2. **Counsel shall produce all trial exhibits to the Courtroom Deputy, no later than 3:00 p.m. on the Friday before trial.**

The Final Pretrial Order will contain a stringent standard for the offering at trial of witnesses and exhibits not listed in the Final Pretrial Order, and the parties are cautioned that the standard will be strictly applied. On the other hand, the listing of exhibits or witnesses that a party does not intend to offer will be viewed as an abuse of the court's processes.

Failure to comply with Local Rule 281, as modified by this order, may be grounds for sanctions.

The parties also are reminded that pursuant to Rule 16 of the Federal Rules of Civil Procedure it will be their duty at the Final Pretrial Conference to aid the court in: (a) the

1   formulation and simplification of issues and the elimination of frivolous claims or defenses;

2   (b) the settling of facts that should properly be admitted; and (c) the avoidance of unnecessary

3   proof and cumulative evidence.  Counsel must cooperatively prepare the joint Final Pretrial

4   Conference Statement and participate in good faith at the Final Pretrial Conference with these

5   aims in mind.[5]  A failure to do so may result in the imposition of sanctions which may include

6   monetary sanctions, orders precluding proof, elimination of claims or defenses, or such other

7   sanctions as the court deems appropriate.

8         IT IS SO ORDERED.

9   DATED:  August 3, 2022.

10  _____

11                  CHIEF UNITED STATES DISTRICT JUDGE

---

[5]  "If the pretrial conference discloses that no material facts are in dispute and that the undisputed facts entitle one of the parties to judgment as a matter of law," the court may summarily dispose of the case or claims.  *Portsmouth Square v. Shareholders Protective Comm.,* 770 F.2d 866, 868-69 (9th Cir. 1985).